**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| ATLANTIC NATURAL FOODS, LLC | § | CASE NO. 25-10676 |
| | § | |
| Debtor. | § | Section A |

**MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO PAY OR HONOR PRE-PETITION OBLIGATIONS TO CERTAIN CRITICAL VENDORS, (II) AUTHORIZING BANKS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS, AND (III) GRANTING RELATED RELIEF**

The debtor and debtor-in-possession, Atlantic Natural Foods, LLC (the "Debtor"), in the above-captioned chapter 11 (the "Case"), by and through its proposed counsel, Fishman Haygood LLP, hereby files this motion (the "Critical Vendor Motion" or the "Motion") seeking entry of an order (i) authorizing the Debtor, in its discretion, to pay all or part of the critical vendor claims of certain critical vendors that have provided: (a) essential goods to, or on behalf of, the Debtor that were received by the Debtor before commencement of the Case; or (b) essential services that were rendered to, or on behalf of, the Debtor before the commencement of the Case. In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 502(f), 541, 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

1

**BACKGROUND**

4. On April 7, 2025 (the "Petition Date"), the Debtor commenced the Case by filing its voluntary petition for relief (the "Petition") under chapter 11 of the Bankruptcy Code.

5. The Debtor continues to operate its businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. No request for the appointment of a trustee or examiner has been made in this Case, and no official committees have been appointed or designated.

7. The factual background, including an overview of the Debtor's business, information on the Debtor's debt structure and information relating to the events leading to the filing of the Case, are set forth in detail in the *Declaration of J. Douglas Hines in Support of the Debtor's First Day Motions* (the "Hines Declaration") filed contemporaneously herewith and incorporated herein by reference.

**THE CRITICAL VENDORS AND RELIE REQUESTED**

8. As of the Petition Date, the Debtor assessed its business relationship with its vendors, particularly the vendors who provide important products that cannot be sourced from other or competing vendors.

9. Prior to and since the Petition Date, the Debtor has worked quickly to assess its vendors with possible outstanding claims and determine which vendors are necessary to the success of the Debtor's operations (collectively, the "Critical Vendors" and as set forth on **Exhibit A**) in connection with this Case. The Debtor considered the following factors to determine who is a Critical Vendor:

    a. whether a vendor could claim a lien;

    b. whether a vendor is essential to the continued operation of the Debtor's business;

    c. whether a vendor is replaceable without significant disruption to the Debtor's operations;

    d. whether a vendor is entitled to a claim under Bankruptcy Code section 503(b)(9); and

    e. whether a vendor is likely to continue doing business with the Debtor notwithstanding nonpayment of prepetition claims.

10. The Debtor relies in the ordinary course of business on the Critical Vendors to supply goods, materials and services without which the Debtor's business either could not operate or would operate at significantly reduced profitability.

11. The Debtor contemplates making payments on pre-petition claims of certain Critical Vendors (collectively, the "Critical Vendor Claims") that become payable post-petition in the ordinary course of business as and when they become due. Specifically, the Debtor has a need to pay Critical Vendors who are currently providing goods and services with respect to the Debtor's ongoing production, shipping, distribution, and warehousing. For the reasons described in detail below, the Debtor seeks permission to make payments on certain pre-petition Critical Vendor Claims in a manner, amount and time that is subject to the Debtor's discretion, subject to the terms and conditions contained in any orders entered by this Court authorizing the use of cash collateral, the borrowing of money pursuant to a DIP loan, and any accompanying approved budgets.

12. The Debtor believes that the payment of the Critical Vendor Claims is vital to its efforts to (i) reorganize its financial affairs in this Case and (ii) preserve and enhance its estate to realize value from any sales of the business or assets. In many cases, the Critical Vendors are the only source, or the most-preferred source, from which the Debtor can procure certain goods and

services within a timeframe and at a price that will permit the Debtor to continue to smoothly operate its business. A failure to pay the Critical Vendor Claims would likely result in many of the Critical Vendors refusing to provide goods and services to the Debtor post-petition and may force the Debtor to attempt to obtain such goods and services elsewhere at a much higher price or in a quantity or quality that is insufficient to satisfy the Debtor's requirements – and there is no guaranty that the Debtor will even be able to replace many of the Critical Vendors.

13. A vendor may be the exclusive or preferred supplier of products or services to the Debtor for several reasons. In some cases, it may be that there is simply no available supply from any other vendor due to the operating region of the Debtor (which is mainly in Asia) or because the Debtor's products require specific ingredients and formulas in their production. Thus, the only way for the Debtor to purchase specific products or services in quantities of the desired amount is through one particular vendor. In other cases, the Debtor has an established relationship with certain vendors, and the time and expense of getting another vendor "up to speed" with the Debtor's ongoing projects is not cost effective – especially since many suppliers are foreign entities. In other instances, due to preferred pricing from existing business relationships, procuring a particular supply of a certain product from an alternative source would be too expensive.

14. The timing of a vendor's supply may also render it a Critical Vendor. The Debtor is highly dependent on its ability to order and receive supplies or services from vendors in a particular timeframe, including on an emergency or expedited basis, as needed at the Debtor's jobsites. The Critical Vendors selected by the Debtor are familiar with the Debtor's various products and operations and if, for example, a particular item or equipment is needed at any location which the Debtor is operating, the current Critical Vendors can deliver the right product.

15. The Debtor intends to apply its sound business judgment and discretion on a case-by-case basis and pay only those Critical Vendor Claims that are: (i) vital to maintaining its operations; and (ii) are willing to provide the Debtor with favorable post-petition terms in accordance with any order granting the relief requested in this Motion. The Debtor believes that, without the ability to pay certain prepetition amounts owed to Critical Vendors, the Debtor's immediate access to necessary goods and services would be extinguished as the Critical Vendors will refuse to continue doing business with the Debtor or may only do business if the Debtor provides trade term accommodations such as advance deposits or payment prior to delivery. Further, as of the filing of this Motion, the Debtor may have already received invoices from certain Critical Vendors who await payment from the Debtor.

16. The Debtor also requests authorization for the Debtor's banks, including Comerica Bank, to honor, process and pay (to the extent funds are available in the accounts) any pre-petition checks or wire transfer requests issued by the Debtor on account of the Critical Vendor Claims. The Debtor further seeks authority to issue new post-petition checks, or effect new electronic fund transfers, to replace any pre-petition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the filing of this Case.

17. Subject to the Court's approval, the Debtor intends to pay the Critical Vendor Claims only to the extent necessary to continue its ongoing operations and preserve the value of its estate during the Case. To that end, in return for paying all or a portion of the Critical Vendor Claims, the Debtor proposes that it be authorized to require the Critical Vendors to provide favorable trade terms for the post-petition procurement of their goods and services.

18. The Debtor seeks authorization to condition payment of the Critical Vendor Claims upon each Critical Vendor's agreement to: (a) continue – or recommence – providing goods and

services to the Debtor in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtor as those in place during the twelve (12) months prior to the Petition Date, or as otherwise agreed by the Debtor in its reasonable business judgment (the "Customary Trade Terms"); and (b) agree that they shall not be permitted to cancel on less ninety (90) days' notice any contract or agreement pursuant to which they provide services to the Debtor. The Debtor also seeks authorization to require, as necessary, the Critical Vendors to enter into a contractual agreement evidencing such Customary Trade Terms.

19. The Debtor further requests that if any party accepts payment pursuant to an order authorizing the relief requested by this Motion and thereafter ceases to provide goods and services in accordance with the Customary Trade Terms: (a) the Debtor may take any and all appropriate steps to recover from such Critical Vendor any payments made to it on account of its prepetition Critical Vendor Claim to the extent that such payments exceed the post-petition amounts then owing to such party; (b) upon recovery by the Debtor, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; and (c) if an outstanding post-petition balance is due from the Debtor to such party, (i) the Debtor may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding post-petition balance, and (ii) such party will be required to repay to the Debtor such paid amounts that exceed the post-petition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## BASIS FOR RELIEF REQUESTED

20. Ample authority exists to allow payment of the Critical Vendor Claims. Courts have generally acknowledged that it is appropriate to authorize the payment (or other special treatment)

of prepetition obligations in appropriate circumstances. In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in sections 1107(a), 1108, 363(b) and 105(a) of the Bankruptcy Code.

21. Similar relief has been granted in this district and other districts. See In re Arabi Trucking Services, LLC, 19-11603 (Bankr. E.D. La. 2019), In re Harvest Oil & Gas, LLC, 09-50397 (Bankr. W.D. La. 2009); In re Louisiana Riverboat Gaming Partnership, et al., 08-10824 (Bankr. W.D. La. 2008); In re Pelts & Skins, L.L.C., et al., 06-10742 (Bankr. E.D. La. 2006); In re Murray, Inc., 04-13611 (Bankr. M.D. Tenn. 2004); and In re Phoenix Group, Inc., et al., 01-12036 (Bankr. M.D. Tenn. 2001).

**A.     Sections 1107(a) and 1108 of the Bankruptcy Code and the Debtor's Fiduciary Duties**

22. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries acting "to protect and preserve the estate, including an operating business's going concern value," on behalf of the debtors' creditors and other parties in interest. In re CEI Roofing, Inc., 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting In re Co Serv, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." CoServ, 273 B.R. at 497. Some courts have noted that there are instances in which a debtor can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. The CoServ court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." Id.

23. As explained above, the Debtor's primary concern at this critical juncture of the Case is to protect and preserve the value of its estate by ensuring that its ongoing operations

7

continue uninterrupted. Given the nature of the Debtor's food production business, if a Critical Vendor goes unpaid on account of its prepetition Critical Vendor Claim, they may assert liens (if warehousing or holding the Debtor's products) or section 503(b)(9) claims. In turn, the Debtor's customers could refuse any further payments to the Debtor, and the Debtor's ability to operate in this Case would be placed in jeopardy. Thus, the Debtor submits that the best way to ensure the value of its estate is preserved during this Case is to pay the Critical Vendors on account of their Critical Vendor Claims and avoid the unnecessary problems that would arise from a lien dispute with vendors and customers.

**B.** **Section 363(b) of the Bankruptcy Code and a Sound Business Justification**

24. Consistent with the debtor's fiduciary duties, courts have also authorized payment of pre-petition obligations under section 363(b)(1) of the Bankruptcy Code where a sound business purpose exists for doing so. See 11 U.S.C. § 363(b)(1); In re Tropical Sportswear, 320 B.R. 15, 17-18 (M.D. Fla. 2005) (court authorized payment to critical vendors for prepetition amounts when a sound business justification existed because the vendors would not do business with the debtors absent the critical vendor status, and the disfavored creditors were not any worse off due to the critical vendor order); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (sound business justification existed to justify payment of prepetition wages); see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.), 29 B.R. 391, 397 (Bankr. S.D.N.Y. 1983) (court relied on section 363 and allowed contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." Ionosphere Clubs, 98 B.R. at 175.

25. As discussed above, payment of Critical Vendor Claims, to the extent funds are available in the Debtor's budget, will prevent severe disruption of the Debtor's ongoing operations. Given the significant consequences to the Debtor, both contractual and reputational, should it fail to pay vendors, the Debtor contends that any payment to a Critical Vendor deemed vital to the Debtor's ongoing operations and projects should be authorized because these are payments that will allow the Debtor to continue its business and preserve its estate.

C. **Section 105(a) of the Bankruptcy Code and the Necessity of Payment Doctrine**

26. In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business. Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "doctrine of necessity" or "necessity of payment" rule. The Court may, therefore, issue any order "necessary or appropriate" to allow a debtor in possession to fulfill its duty to preserve the business' going-concern value, including an order authorizing payment in full or in part of certain prepetition claims of unsecured creditors prior to confirmation of a plan. See CoServ, 273 B.R. at 496-97; see also In re Mirant Corp., et al., 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003).

27. Today, the rationale for the necessity of payment rule – the rehabilitation of a debtor's business – is "the paramount policy and goal of Chapter 11," Ionosphere Clubs, Inc., 98 B.R. at 176; see also In re Lehigh & New England Ry., 657 F.2d 570, 581 (3d Cir. 1981) (noting

that the "doctrine of necessity" permits "immediate payment of claims to creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); In re Boston & ME. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtor's continued operation); CoServ, 273 B.R. at 500 (permitting chapter 11 debtor to pay the claim of a prepetition general unsecured creditor in full because the "[d]ebtors very likely must deal with [such creditor] or risk harm to their estates or their going concern value").

28. Courts routinely authorize chapter 11 debtors to pay prepetition claims of non-priority general unsecured creditors when payment is necessary to preserve or enhance the value of the debtor's estate to the benefit of all creditors. See In re Equalnet Commc'ns Corp., 258 B.R. 368, 369-70 (Bankr. S.D. Tex. 2000) (business transactions critical to the survival of the business of the debtor are exceptions to the general rule of nonpayment of prepetition claims prior to plan confirmation); Lehigh, 657 F.2d at 581 (stating that courts may authorize payment of prepetition claims where there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); In re Just For Feet, 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("to invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claim is critical to the debtor's reorganization"); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

29. Oftentimes, the debtor must satisfy a prepetition claim in order to preserve its business. CoServ, 273 B.R. at 497. Payment of prepetition claims is necessary, and may be authorized, whenever it is established that (1) it is critical that the debtor deal with the claimant, (2) a failure to deal with the claimant risks probable harm or eliminates an economic advantage

disproportionate to the amount of the claim, and (3) there is no practical or legal alternative to payment of the claim. Id.

30. Advance proof of necessity of payment, however, is not required in every instance. See Mirant Corp., 296 B.R. at 429. A chapter 11 debtor, especially early in the case, is in a "precarious position," and serious damage could occur to the debtor's business if courts required advance proof that each payment of a prepetition claim was necessary within the meaning of the CoServ test. Id. Therefore, courts often grant the debtor general authority to pay the prepetition claims of critical vendors as necessary. *Id.*

31. The Debtor's request for relief is appropriate under the foregoing standards. As stated above, the payment of the Critical Vendor Claims is essential to the operation of the Debtor's business at this critical juncture to ensure that the Debtor is able to transition smoothly into the Case, maintain its vendor and customer relationships, and sustain its revenue streams. In turn, the maintenance of the Debtor's business during the Case is crucial to the Debtor's ability to provide the greatest benefit for all stakeholders.

## IMMEDIATE RELIEF REQUESTED

32. Pursuant to Bankruptcy Rule 6003, the Court may grant relief within 21 days after the filing of the petition regarding a motion to use property of the estate only if such relief is necessary to avoid immediate and irreparable harm. For the reasons already set forth herein, the Debtor submits that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, its estate and its creditors.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

33. The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h), "[a]n order authorizing the use, sale, or lease of

property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Accordingly, because any such stay would significantly disrupt Debtor's business, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Rule 6004(h), to the extent applicable. Further, the Debtor respectfully requests a finding that the notice requirements under Bankruptcy Rule 6004(a) are met.

## RESERVATION OF RIGHTS

34. Nothing contained in this Motion nor any action taken pursuant to the relief requested herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a waiver of any claim or cause of action that may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (g) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to this Motion.

## NOTICE

35. Notice of this Motion has been provided to the following: (a) creditors who claim to hold security interests or liens, including (i) the Office of the United States Trustee for the Eastern District of Louisiana; (ii) the Debtor's twenty (20) largest unsecured creditors; (iii) Miller, Canfield, Paddock and Stone, P.L.C., as counsel to Comerica Bank; (iv) the United States

Attorney's Office for the Eastern District of Louisiana; (v) the Internal Revenue Service; and (vi) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

36. The Critical Vendors will receive notice of this Motion.

37. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

**WHEREFORE**, the Debtor respectfully requests entry of an order granting the relief requested herein and such other or further relief as is just.

Dated: April 7, 2025

*/s/ Tristan Manthey*
Tristan Manthey, La. Bar No. 24539
Joseph A. Caneco, La. Bar No. 40721
**FISHMAN HAYGOOD LLP**
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: 504-586-5252
Facsimile: 504-586-5250
E-mail: tmanthey@fishmanhaygood.com
jcaneco@fishmanhaygood.com

*Proposed Counsel to Atlantic Natural Foods, LLC*

## EXHIBIT A

## CRITICAL VENDORS

| Critical Vendor | Address | Amount Owed as of 4/7 (approx.) | Reason for Critical Vendor Status |
|---|---|---|---|
| **A Shipping Inc.** | **A Shipping Inc.**<br><br>**430 S. Garfield Ave. #403**<br>**Alhambra CA 91801** | **2,965.00** | **Shipping company** |
| **A T & T Mobility** | **A T & T Mobility**<br><br>**P.O. Box 6463**<br>**Carol Stream IL 60197-6463** | **1,386.84** | **Company cell phones** |
| **Dot Foods Inc - Mar** | **Dot Foods Inc - Mar**<br><br>**PO Box 854541**<br>**Minneapolis MN 55485-4541** | **5,947.57** | **Distribution center for Wal-Mart sales** |
| **General Tuna Corporation** | **General Tuna Corporation**<br>**Millennium Industrial Economic Zone**<br>**Purok Lansong**<br>**Tambler General Santos City**<br>**Philippines** | **142,971.96** | **Manufacturer of our main SDA products** |
| **John S. James Co.** | **John S. James Co.**<br><br>**PO Box 2166**<br>**Savannah GA 31402** | **4,652.10** | **Shpping and Customs clearing** |
| **Koola Logistics** | **Koola Logistics**<br><br>**PO Box 3189**<br>**Carmel IN 46032** | **3,353.82** | **Shipping Company** |
| **Logistics Xpress LLC** | **Logistics Xpress LLC**<br><br>**4262 Blue Diamond Rd** | **28,968.43** | **Shipping Company** |

| Critical Vendor | Address | Amount Owed as of 4/7 (approx.) | Reason for Critical Vendor Status |
|---|---|---|---|
| | Las Vegas NV 89139 | | |
| Mid Atlantic Warehouse | Mid Atlantic Warehouse<br><br>P.O. Box 7233<br>Rocky Mount NC 27804 | 258,505.45 | Factory location in NC - Equipment and Raw Materials are still there |
| Nestlé Deutschland AG | Kerstin Schoenrock/Nicole Lonnen<br>Nestlé Deutschland AG<br>Lyoner StraBe 23<br>Frankfurt 60523<br>Germany | 345,338.83 | Provider of one of key products |
| Oracle NetSuite | Wells Fargo Equipment Finance, Inc<br>PO Box 858178<br>Minneapolis MN 55485-8178 | 39,147.95 | ERP System - NetSuite |
| Pataya Food Industries LTD | Pataya Food Industries LTD<br>1011 Supalai Grand Tower 27th Floor<br>Rama 3 Road, Chongnonsi, Yannawa<br>Bangkok Thailand 10120<br>Thailand | 1,280,389.10 | Provider of some of our main products |
| R & R Express Logistics Inc | R & R Express Logistics Inc<br>PO Box 72124<br>Cleveland OH 44192 | 16,010.08 | Shipping company |
| RBW Logistics, LLC | RBW Logistics, LLC<br><br>PO Box 10027<br>Augusta GA 30903 | 11,700.00 | Warehouse for our Aldi product - private label |

| Critical Vendor | Address | Amount Owed as of 4/7 (approx.) | Reason for Critical Vendor Status |
|---|---|---|---|
| **States Logistics Services, Inc** | **States Logistics** <br><br>**5650 Dolly Ave** <br>**Buena Park CA 90621** | **45,649.04** | **West coast warehouse** |
| **TES Logistics, Inc** | **TES Logistics, Inc** <br><br>**PO Box 873** <br>**Wilson NC 27894** | **181,987.45** | **Warehouse in NC - 3pl** |
| **Triangle East Storage, Inc** | **Triangle East Storage, Inc** <br><br>**PO Box 942** <br>**Wilson NC 27894** | **6,106.74** | **Warehouse in NC** |
| **WingSwept, LLC** | **WingSwept, LLC** <br><br>**800 Benson Rd** <br>**Garner NC 27529** | **16,646.98** | **IT Consulting** |